UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LIFE CHIROPRACTIC CENTER, P.A.; RICHARD THOMAS, D.C., and JOHNNIE THOMAS,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 2:24-cv-00503-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pursuant to the False Claims Act ("FCA"), Petitioners Life Chiropractic Center, PA., Richard Thomas, D.C., and Johnnie Thomas (collectively "Petitioners") have filed the instant suit to Quash or Modify Investigative Demands NOS 28-2024 and 29-2024. Dkt. 1. Respondent, the United States of America, opposes the Motion. Dkt. 7.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons outlined below, the Court DENIES Petitioners' Motion.

## II. BACKGROUND

On January 9, 2024, the United States Attorney's Office for the District of Idaho

issued Civil Investigative Demand ("CID")[1] 001-2024 as part of an FCA investigation into Medicare and Medicaid claims submitted by Life Chiropractic Center ("LCC"). CID 001-2024 specifically informed LCC that the United States had commenced its investigation based upon "allegations that Life Chiropractic Center, P.A. (LCC) submitted fraudulent claims for reimbursement to Medicare and/or Medicaid . . . ." Dkt.7-2, at 2.

CID 001-2024 required LCC to produce documents, answer interrogatories, and provide oral testimony about the allegations of fraud. LCC complied with the request and appeared for oral testimony on July 18, 2024, in Coeur d' Alene, Idaho.[2] By statute, a testifying witness is allowed to have counsel present, as well as a personal representative. 31 U.S.C. § 3733(h)(2).

Richard Thomas—owner of LCC and its sole physician—appeared to testify on behalf of LCC. He brought his attorney and his wife—Johnnie Thomas. Besides being Richard's wife, Johnnie serves as the office manager of LCC and is responsible for billing and submitting claims to insurance. Both Richard and Johnnie testified on July 18, 2024.

On September 26, 2024, the United States issued two new CIDs—Nos 028-2024 and 029-2024—one each to Richard Thomas and Johnnie Thomas in their individual capacity—regarding an investigation of allegations that LCC submitted "fraudulent claims for reimbursement to Medicare and/or Medicaid." Dkts. 7-5; 7-6.

---

[1] A CID is a pre-litigation tool used by government agencies to gather information. They are, in essence, a subpoena—but issued *before* a lawsuit is filed. CIDs are frequently used when investigating potential violations of the FCA or other civil laws.

[2] LCC is in Post Falls, Idaho—about ten miles from Coeur d' Alene.

MEMORANDUM DECISION AND ORDER - 2

Petitioners' counsel then met and conferred with the United States on numerous occasions to discuss concerns with the newly issued CIDs. Some concerns were more technical in nature, and the United States updated and reissued corrected CIDs in due course. Other concerns were more substantive.

Specifically, Petitioners were concerned the new CIDs appeared to seek the same information sought previously in the CID directed at LCC. They argued a more definitive statement was necessary to understand what the United States planned to discuss at the oral exam. Relatedly, Petitioners asked for a copy of the transcript from the July 8, 2024 oral examination so they could review the content and illustrate why the new CIDs were, essentially, duplicative.[3] Finally, Petitioners requested the United States reissue the two CIDs as a single CID directed at LCC, not them personally.

The United States disagreed with Petitioners' assessment of the new CIDs and took the position that the CIDs were enforceable, and Petitioners were not entitled to any more information than what had already been provided. The United States explained the areas of examination and that it was performing an FCA investigation and was entitled to ask anyone whatever questions it deemed appropriate—even if potentially duplicative. It also declined to provide a copy of the transcript from the prior examination, citing the ongoing investigation and concerns the Petitioners might try to "harmonize" their new testimony

---

[3] Petitioners also objected to the proposed date for Richard and Johnnie's oral examination. The parties subsequently vacated that date, agreed to work together on a new mutually-agreeable date, and have since been waiting on this decision from the Court before officially scheduling any oral exam.

MEMORANDUM DECISION AND ORDER - 3

with their old testimony.[4] That said, the United States offered to allow Petitioners an opportunity to view a copy of the transcript at its office in Boise. Finally, the United States declined to reissue the CIDs to LLC as opposed to the Thomases individually.

This lawsuit followed.

On October 22, 2024, Petitioners filed their Complaint and Petition to Quash. Dkt. 1. Therein, Petitioners ask the Court to quash the newly-issued CIDs. At the very least, Petitioners request help related to the areas of concern they raised with the United States prior to filing suit. Namely, Petitioners asks that the Court compel the United States to: (1) provide a copy of the transcript from the prior examination, (2) provide a more detailed statement of the primary areas of inquiry to be discussed at the oral exam, (3) limit any inquiry to evidence not already within the United States's possession, and (4) change the target of the CIDs to LCC, instead of the individual Petitioners. *See generally* Dkt. 1. The United States opposes the Motion in all respects. Dkt. 7. The matter is ripe for review.

### III. LEGAL STANDARD

When the United States Attorney General or his/her designee "has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation," he or she may issue a CID requiring the person or company to, among other things, "give oral testimony concerning such documentary material or information." 31 U.S.C. § 3733(a)(1).

---

[4] As discussed below, this explanation just added fuel to the fire because Petitioners assert it shows the Government will be impermissibly repeating questions from the prior examination during the upcoming examination. As explained, however, even if that is the case, it is not prohibited.

CIDs issued pursuant to the FCA are "considered a type of administrative subpoena." *United States v. Markwood*, 48 F.3d 969, 975–76 (6th Cir. 1995). *See also United States v. Picetti,* 2019 WL 1895057, at *2 (E.D. Cal. Apr. 29, 2019), report and recommendation adopted, 2019 WL 13458271 (E.D. Cal. Sept. 26, 2019) ("Civil investigative demands are enforced as administrative subpoenas.") (citing *Markwood*, 48 F.3d at 975–76).

The FCA provides that any person who has received a CID may file, "a petition for an order of the court to modify or set aside such demand." 31 U.S.C. § 3733(j)(2).

"The scope of judicial review in an administrative subpoena enforcement proceeding is quite narrow." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (cleaned up). The Court's review is limited to "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (cleaned up).

"If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal*., 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), overruled on other grounds as recognized in *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir.1994).

## IV. ANALYSIS

Put simply, the present motion—in fact this entire case—is a motion to quash. Petitioners' feel CIDs 28-2024 and 29-2024 are unduly burdensome and that the Court

should quash, or significantly modify, the demands. Petitioner's arguments are interwoven. Thus, the Court will try to unpack everything in one fell swoop.

Petitioners do not challenge CIDs 028-2024 or 029-2024 on either of the first two grounds for judicial review. Petitioners agree the United States has authorization to investigate FCA claims and, further, that the United States complied with the procedural requirements of the FCA in issuing the CIDs. Dkt. 1, at 12. Petitioners do, however, challenged whether the evidence the United States seeks is relevant. In their estimation, the United States is overreaching and essentially harassing them when they already appeared and answered questions about the allegations.

The United States consistently states this is the "first time" it will be questioning Richard and Johnnie Thomas about the FCA allegations so there is no harassment or duplication of efforts. Dkt. 7, at 9, 10, 11. But that is not exactly true. From a hyper-technical standpoint, yes: this is the first time the United States will be questioning Richard and Johnnie *as individuals*. But the United States already questioned Richard and Johnnie on behalf of LCC. And about these same topics.

The Court has not seen the transcript from the prior oral examination, but the United States does not argue that it previously instructed Richard and Johnnie to *only* answer as representatives of LCC or *without* regard for their personal thoughts. Also, it does not appear Petitioners knew at that time that individual CIDs would follow the business CID. Thus, Richard and Johnnie's answers were, presumably, not just their "business" answers,

MEMORANDUM DECISION AND ORDER - 6

but their "personal" answers as well.[5]

In short, the Court does not necessarily agree with the United States's conceptualization that this is the "first" time it will be examining Richard and Johnnie. But that does not mean the new CIDs must be quashed. The more pertinent question is whether the CID's request relevant information and/or whether that request is burdensome on Petitioners.

"The relevancy of information sought by administrative subpoenas is understood to be quite broad." *Martin v. Gard*, 811 F. Supp. 616, 621 (D. Kan. 1993). "If the material requested 'touches a matter under investigation,' then relevancy is established." *Id*. (*quoting Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd*., 878 F.2d 875, 882 (5th Cir. 1989)). And Petitioners do not contend the information *is not* relevant. Again, their hang-up (and frankly the Court's hang-up) is whether the information is duplicative and, therefore, unduly burdensome.

It appears this is why Petitioners want to review the prior transcript *and* have the Government provide a more detailed statement regarding what they plan to discuss at the oral examination for these CIDs—to mount a strong showing for their "duplication is

---

[5] The Government admits that Richard and Johnnie's knowledge is attributable to Life Chiro. Dkt. 7, at 12 (noting that, "for purposes of establishing scienter, each individual's knowledge is attributable to [LCC]"). Thus, Richard and Johnnie's answers provided on behalf of the entity are attributable to them as individuals, and vice versa. But this admission or recognition does not doom the United States's argument. Again, it is within the United States's statutory authority to issue CIDs and investigate potential FCA violations— whether directed to businesses, individuals, or both. And somewhat ironically, Petitioners' argument cuts both ways. They do not claim issuing a second subpoena to LCC would be problematic. Or that having Richard and Johnnie answer additional questions on behalf of LCC would be problematic. The argument is very tailored to avoiding them being named *personally* on the CIDs. But, while there is attribution going both ways between LCC and Richard and Johnnie, there is no reason to take this sometimes unwieldy legal doctrine and apply it strictly to these CIDs.

MEMORANDUM DECISION AND ORDER - 7

burdensome" argument. The problem is neither of the things Petitioners want the Court to order are required by statute.

Petitioners cite no authority for their contention that the United States must provide them with any information about the nature of testimony, let alone "with a specific list of the topics to be discussed and the questions the Government intends to pose." Dkt. 1, at 13 n.3. By statute, the United States must simply "describe the general purpose for which the demand is being issued and the general nature of the testimony, including the primary areas of inquiry, which will be taken pursuant to the demand." 31 U.S.C. § 3733(a)(2)(D)(v).

Here, the Government indicated in the CIDs themselves that the "general purpose for which this [CID] is issued is to discover knowledge and information regarding potential violations of the False Claims Act." Dkt. 7-5, at 2; Dkt. 7-6, at 2. The CID went on to state "the primary areas of inquiry for testimony will include: (a) your treatment of Medicaid beneficiaries; and (b) your knowledge of the statutes, regulations, and rules governing the treatment of Medicaid beneficiaries." *Id*. In follow-up communications between counsel, the United States provided more details about the investigation and the reasons for the oral examinations. *See, e.g.,* Dkts. 7-8, 7-9.

The irony here is that the Government appears to have provided *more* detail to Petitioners than what the statute requires. And yet, that still hasn't answered Petitioner's question about how this round of CIDs differs from the previous CID. But, frankly, it is not for Petitioners to know at this stage. This is still an *investigation*. *See In re Civil Investigative Demand No. DNM 23-02*, 2023 WL 6458489, *5 (D. N.M. Oct. 4, 2023) (noting there is no support for the idea that the Government is required to "provide specific

MEMORANDUM DECISION AND ORDER - 8

details into its investigation" or "why follow-up testimony is necessary").

The Government does not have carte blanche authority to question anyone at any time for any reason—even in FCA cases. But its discretion is broad at this investigatory stage. It has provided Petitioners with information required by statute (and more) concerning the general subject areas of their expected testimony and why it is relevant. And if there is some overlap with the prior testimony, so be it. The Court cannot locate, and Petitioners did not provide, any case that explicitly states a second or subsequent CID cannot issue or that areas already discussed cannot be re-examined.[6] Thus, the Court will not quash the CIDs on that basis or require that the United States only ask "new" questions.

In like manner, that the same people who were the corporate representatives are now being questioned in their individual capacities is part and parcel to the investigation of a small business. The United States is well within its right to seek testimony that bears on both the liability of the business entity *and* the liability of the individuals who own that business. Some repetition is, therefore, entirely understandable and appropriate. But the Court sees no meaningful reason to limit the United States in that regard or force it to change the target of the CIDs from the named Petitioners to the LCC when the United States is seeking information from individuals in their personal capacity—even if they are

---

[6] To be sure, Petitioners have ardently suggested the question is not just whether a second series of CIDs can issue, but whether the Government can seek out information that is "already within the [it's] possession." Dkt. 1, at 11; Dkt. 11, at 2–4, 8–9. Setting aside that this "possession" requirement has most closely been tied to *document* production and not formally accepted in the Ninth Circuit, the United States persuasively explains that, even if it already has some of this information, it is investigating both LCC (as a company) and Richard and Johnnie (as individuals) and so these issues need to be fleshed out.

MEMORANDUM DECISION AND ORDER - 9

part of the business as well.[7]

Lastly, pursuant to statute, the Government can, for "good cause" deny a person from receiving a copy of the transcript from any oral exemption and, instead, "limit" him or her to an "inspection" of the same. 31 U.S.C. § 3733(h)(6).

Here, the United States has asserted its refusal to provide a transcript is supported by two things: (1) the ongoing investigation, and (2) a concern that the witnesses will "harmonize" their testimony. The Court feels that both reasons are "good cause" for the refusal. The first—an ongoing investigation—is likely sufficient. The Petitioners ague the second is less persuasive and, in fact, is a smoking gun. They claim that if the United States is concerned with the harmonization of testimony, that illustrates they are just going to ask the same questions they asked before and, full circle, the CIDs are an improper use of the United States's investigatory powers.

The Court is not as convinced this is a problem. The United States has an interest in preserving the accuracy and integrity of any witnesses' testimony, and denying a copy of the transcript is reasonable. But, even if the Government *withholds* a copy of the transcript, it still must allow the other side to "inspect" it. 31 U.S.C. § 3733(h)(6). Thus, there is a way for Petitioners to accomplish their goal—even if not exactly in the manner they prefer.

And in this case, the Government has already offered just that—for Petitioners to review the transcript at their Boise office. Petitioners vehemently object to this as they are

---

[7] A final note. Each of these arguments falls under the "burden" umbrella. But Petitioners have not argued that travelling 10 miles and spending a few hours (each) for the oral examination is unduly burdensome on them or their business. Again, their focus is more on the substance of the CIDs and whether the repetitiveness (perceived or real) is burdensome.

MEMORANDUM DECISION AND ORDER - 10

all located in North Idaho. The Court agrees forcing Petitioners and their counsel to all travel to Boise is unnecessary. The Government can make the transcript available for review at its office in the Coeur d' Alene Courthouse.[8]

## V. CONCLUSION

As noted, each of Petitioners' arguments dove-tailed into the next, and so the Court's analysis has winded its way along that same path. But to summarize: the United States need not fully justify or explain its investigatory strategy or outline *why* it needs the information from Richard and Johnnie at this time; it need only show that the information is relevant. The United States complied with the statute here. The United States is also not required to provide the target of a CID with any more information about the scope of its investigation or potential topics and questions than what is statutorily required. Again, the United States complied.

The United States cannot exceed the statute or burden targets. But in an investigation, the scope is broad, and the bar relatively easy to satisfy. The United States has shown the information is relevant and, even if duplicative, necessary, because it is investigating both LCC *and* Richard and Johnnie individually.

The United States was also within its right to limit Petitioners' review of the July 2024 transcript.

## VI. ORDER

1. Petitioners' Motion to Quash or Modify is DENIED. The Court will not quash CID

---

[8] The AUSA assigned to this case can travel from Boise or assign another AUSA from the Coeur d' Alene office to oversee the review.

Nos. 028-2024 and 029-2024 or require that the United States provide any more detail than it already has.

2. The parties shall work together to find a mutually agreeable date and time for a review of the prior oral examination transcript in the Coeur d'Alene area and a mutually agreeable date and time for the new oral examinations.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: July 7, 2025

_____
David C. Nye
Chief U.S. District Court Judge